HENRY BRANSLEY AND FRANCES BRANSLEY, PLAIN-
TIFFS-RESPONDENTS, v. ESTHER GOODMAN, IDA
SALZER, MARTIN TROP, INDIVIDUALLY AND TRADING
AS SAL-GOOD REALTY CO., DEFENDANTS-APPEL-
LANTS.

Superior Court of New Jersey
Appellate Division

Argued June 11, 1956—Decided June 25, 1956.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Samuel M. Goodman* argued the cause for the defendants-appellants.

*Mr. Louis K. Wilder* argued the cause for the plaintiffs-respondents (*Mr. Samuel Schwartz*, attorney).

The opinion of the court was delivered by

FREUND, J. A. D.    Since 1940 the plaintiffs as tenants have occupied a 2½-room apartment on the first floor of a five-story apartment building owned by the defendants located at No. 340 Fairmount Avenue in Jersey City.   The plaintiffs' apartment and the four apartments directly above it are served by a single water supply unit.

The plaintiffs sought to recover for damage to their furniture caused by water leaking through the ceiling of their living room.   The case was heard without a jury and at the conclusion of the trial, no stenographic record having been taken, the judge filed a statement of evidence and law, and awarded damages of $250 to the plaintiffs, from which judgment the defendants appeal.

The evidence discloses, and the trial court found, that during the night of March 20, 1955 water poured through the ceiling of the plaintiffs' living room damaging their furniture.   There was undisputed testimony that on at least four previous occasions from 1947 to 1955 water had leaked through the ceiling of the plaintiffs' living room, causing damage on several occasions.   In each instance the leak was due to a defective nipple in the water supply lines, although

from different levels: once from the fifth floor, twice from the fourth floor and once from the third floor. The 1955 leak was also due to a defective nipple in the third floor line, but this time from the cold water line, whereas the previous leak from that floor had been in the hot water line. In each prior instance, the nipple was replaced and the leak stopped, but admittedly the defendants never caused an inspection to be made of the entire plumbing unit which served the five apartments of which the plaintiffs occupied the ground floor, in order to determine what caused the recurrence of defective nipples. Accordingly, the trial judge found that the defendants had actual notice that the water supply system was subject to failure and were under a duty to make reasonable inspection of the water supply system to determine what, if any, basic defect was responsible for the repeated breakdowns, and that if such an inspection had been made it probably would have disclosed the defect in the nipple which caused the last leak.

The defendants argue that they had no notice, actual or constructive, of any defect in the plumbing system as a whole. They contend that it was error for the trial court to charge them with the responsibility of anticipating further leaks in the plumbing system after they had repaired the leaks as they occurred. They concede that they were responsible for the maintenance of the plumbing system. *Cf. Siggins v. McGill*, 72 *N. J. L.* 263 (*E. & A.* 1905); *Daniels v. Brunton*, 7 *N. J.* 102 (1951). There being no dispute as to the basic facts, the determinative question is whether we may rule as a matter of law, as the defendants urge, that they were not placed on actual notice of the existence of a defect in the plumbing system despite the admitted occurrence of five previous leaks in the system over a period of eight years, culminating in the leak upon which the present suit is predicated.

The defendants rely upon *Dreeves v. Schoenberg*, 82 *N. J. L.* 335 (*Sup. Ct.* 1912); *Wright v. General Ceramics Co.*, 122 *N. J. L.* 44 (*Sup. Ct.* 1939) and *Schnatterer v. Bamberger & Co.*, 81 *N. J. L.* 558 (*E. & A.* 1911), which

hold that to charge a landlord with negligence in failing to make repairs he must have had notice, actual or constructive, of the existence of a defect. However, the cases are factually dissimilar to the instant matter and it merely remains to determine whether the facts here presented come within the purview of the accepted principle of law there stated. Although in *Dulberger v. Radli,* 105 *N. J. L.* 126 (*E. & A.* 1928) the plaintiff tenant had a lease whereby the defendant landlord agreed to repair the water pipes, the principle as there enunciated is applicable in this case, because here the landlord concedes responsibility for maintenance of the plumbing system. In the *Dulberger* case, the plaintiff tenant sued for injuries resulting from the fall of a plaster ceiling in their kitchen. The water system had leaked badly and as a result part of the ceiling fell. This break was repaired. Ten months later, water again leaked through the kitchen ceiling, whereupon the landlord tested the ceiling with a broom handle and said it was "all right." However, the ceiling fell again, this time on Mrs. Dulberger's head. The court held:

"* * * It is, of course, a fundamental rule in this general class of cases, that a duty of care normally involves the duty of making reasonable inspection at proper times and of reasonable diligence in making repairs looking to the safety of the premises if such reasonable inspection disclose defective conditions. * * * Negligence could be inferred from lack of such inspection; and if such negligence were the proximate cause of injury to the plaintiff, there would be liability. It was clearly open to a jury to infer that the ceiling fell on account of the water, and they were entitled to find that defendant should have anticipated this as a probable result of the leakage and should have made inspection accordingly. * * *"

See *Ingling v. Public Service Elec. & Gas Co.,* 10 *N. J. Super.* 1, 11 (*App. Div.* 1950). So here. The trier of the facts could reasonably have inferred from the repeated leaks that at least the nipples in the water supply system were defective and that the defendants' admitted failure to inspect the system was negligence. We deem it significant that the defendants' maintenance man, Maresca, admitted that as a result of these continual leaks the defendants,

prior to the leak of March, 1955, considered making an inspection of the plumbing system of all apartments in the plaintiffs' unit, but decided against it because they believed it would be too expensive. Thus, it is reasonably inferrable that the defendants realized that there was some defect in the system which was causing the recurring breakdowns. However, they failed to produce any testimony that the cost of such an inspection would have been prohibitive, and in any event the question of what would have constituted a reasonable inspection was for the jury or, in this case, the trier of the facts. Moreover, the assumption that a reasonable inspection would not have revealed a defective condition which had been causing the leaks is highly speculative. The defendants failed in their legal obligation to make any inspection. To exonerate such failure would place the tenant in the position of having his property exposed to possible continuing damage and the landlord would be relieved of any duty to inspect. *Frank v. Conradi,* 50 *N. J. L.* 23 (*Sup. Ct.* 1887); *Turzay v. Berkowitz,* 125 *N. J. L.* 61 (*Sup. Ct.* 1940); *Caruso v. Monschein,* 24 *N. J. Super.* 55 (*App. Div.* 1952); *2310 Madison Avenue v. Allied Bedding Mfg. Co.,* 121 *A. 2d* 203 (*Md. Ct. App.* 1956); *Restatement of the Law of Torts,* §§ 360, 361, *p.* 976; 52 *C. J. S., Landlord and Tenant,* § 417(4), *p.* 51.

The defendants further argue that the measure of damages applied by the trial court was improper, contending that the plaintiffs are entitled to have their furniture restored merely to the condition in which it was immediately prior to its being damaged. They rely upon *Moeller v. Weston Trucking & Forwarding Co., Inc.,* 136 *N. J. L.* 643 (*Sup. Ct.* 1948), which contains *dicta* to the effect that the cost of repairs may not be recovered if it exceeds the value of the articles immediately prior to repair.

It is settled that evidence of the cost of repairs is evidential on the issue of the difference in value of goods before and after injury. *Nixon v. Lawhon,* 32 *N. J. Super.* 351 (*App. Div.* 1954); *Douches v. Royal,* 1 *N. J. Super.* 45 (*App. Div.* 1948). The plaintiffs' expert testified that the

total cost of repairs to the damaged furniture would be $318. He did not estimate what its value was immediately prior to the leak, but testified that when purchased ten years before it had cost $1,000.

The defendants' expert disputed the cost of repairs to the furniture. In the absence of any proof that the cost of repairing the furniture exceeded its value before it was damaged, we are satisfied that the award of $250 was not excessive. *Smith v. Ryan,* 10 *N. J. Misc.* 296 (*Sup. Ct.* 1932).

The defendants last argue that the plaintiffs were guilty of contributory negligence in failing to change the position of their furniture after the first leak in 1947. This argument is completely untenable and being patently frivolous merits no discussion whatsoever.

The judgment will be affirmed.